WILLIAM ROOT *v.* GEORGE WAGNER, Sheriff, &c.

The party in whose favor process.issues, may give such directions to the sheriff as will not only excuse him from his general duty, but bind him to the performance of what is required of him.

Where a judgment is recovered against several defendants, and execution issued against all, the plaintiff in the judgment, or the assignee thereof, may direct the amount thereof, or any thing less than the whole amount, to be made out of the property of any or either of the defendants.

Where a judgment was recovered against four defendants, C., K., S. and T., and an execution issued thereon was levied upon the property of C., K. and S., whereupon the holder of the judgment directed the sheriff to let the sale of K.'s property, which was advertised for sale, go down, but to hold on to the levy as to the property of C. and S., and to make two-thirds of the judgment out of the property so levied on, of C. and S., which order and direction the sheriff refused to obey: *Held,* that the sheriff was liable to the holder of the judgment for two-thirds of the amount thereof, upon the assumption that the property of C. and S., which he had levied on, was sufficient to make that amount.

*Appeal from a judgment of the Supreme Court, entered upon the report of a referee.*

THE action was prosecuted to recover from the defendant, as sheriff of Yates county, the balance due upon a

judgment owned by the plaintiff, upon. which execution had been issued and delivered to the defendant as sheriff. The facts found by the referee, before whom the cause was tried, are as follows:    That a judgment was obtained in the supreme court in favor of the Bank of Genesee, against Alva Clarke, Joseph Ketchum, Theodore F. Sharpe and Nelson Thompson, defendants, for the sum of $924.23, and that the same was docketed in the clerk's office of Yates county on the 30th of August, 1850.    That an execution was issued on said judgment, and received by the defendant as such sheriff, on the 31st day of August, 1850. . That the defendant, ·as such sheriff, pursuant to and by virtue of said execution, levied upon personal property of the defendants in the execution (except that of Nelson. Thompson), in the life-time of the execution, to an amount of between two and three thousand dollars, viz:    On a store of goods of said Sharpe valued at $2,000; a span of horses of Clarke valued at from $250 to $400, and upon live stock and farm property of said Ketchum valued at $1,000.    That on the 30th of November, .1850, and after said levy, the said judgment was sold and assigned ˙to the plaintiff in this action, for a valuable consideration, of. which sale and assignment the sheriff had notice.    That the said sale and assignment were made to the plaintiff in good faith, for a valuable consideration by him paid, and that he thereby became and is the lawful owner of said judgment.    That after such assignment the plaintiff in this action directed the sheriff to let the sale of Ketchum's property, advertised to be sold on the day after the said assignment was made, go down, but to hold on to the levy and all the levy by him made, on the property of other defendants, until further directions.    That the property of said Ketchum, so advertised to be sold, was of· sufficient value to make the amount of such execution.    That after such assignment and notice to the sheriff, the plaintiff in this action ordered and directed the defendant, as sheriff, to make two-thirds of said

judgment out of the property so levied on by him, of the said Clarke and Sharpe, which order and direction the defendant, as such sheriff, neglected and refused to comply with and obey. That this action was commenced on the 24th day of June, 1851, and that two-thirds of the original judgment, on the 9th of July, 1857, amounted to the sum of $912.20, and the referee found as a conclusion of law that the plaintiff was entitled to recover the said two-thirds of the amount of the original judgment so assigned to him, with interest thereon from the time of docketing said judgment. The judgment upon the report of the referee was affirmed at general term, and the defendant appealed.

*F. Kernan*, for the appellant.

I. The recovery is not for any act or omission of the defendant occurring prior to the 30th of November, 1850. The alleged cause of action upon which the recovery was had, is that the sheriff did not, in obedience to instructions given to him after that day by the plaintiff who had purchased the judgment, make two-thirds of the amount of the execution from the property of Clarke and Sharpe, two of the four judgment debtors.

II. Upon the facts of the case, the defendant is not liable for two-thirds of the judgment, and the referee erred in deciding that he was.

1. The judgment was against the four defendants for damages and costs, and there was no allegation or proof as to whether it was upon contract or for a *tort;* or whether, as between the defendants themselves, either had superior equities, as against the others, as to its payment. (2 Barb. Ch. R. 462, per Chancellor; 2 J. Ch. R. 131; 11 Paige, 19.)

2. The execution was in the usual form. There was no notice or special direction to the sheriff as to executing the writ, until after the 30th of November, 1850. In advertising and proceeding to make the amount of the execution

from the property of Ketchum, one of the defendants, on the 30th of November, the defendant was acting according to law. He omitted to collect the amount of the execution on that day by the express direction of the plaintiff herein.

3. Under these circumstances, the defendant was not required to make two-thirds of the amount of the execution from the property of Clarke and Sharpe, and is not liable to the plaintiff for omitting to do so.

(*a.*) The sheriff is a minister of the law, not the agent of the party. So long as he executes process according to the law, he cannot be made liable to the party, in an action on the case, for refusing to follow his instructions as to the manner of executing it. He may collect an execution in. thirty days, but he is not liable to the party if, in disregard of his instructions, he give the debtor sixty days to pay it. He may, in defiance of the directions of the party, adjourn a sale of property, to try to obtain a better price. It is submitted, therefore, that if the plaintiff in the execution had, on issuing it, directed the sheriff to make two-thirds of the amount from the property of Clarke and Sharpe, he was not bound to do so, but might have levied it from the property of Ketchum.

(*b.*) But in this case no special directions were given to the sheriff until the time to levy by virtue of the execution had expired, and until, relying on the property of Ketchum as sufficient to satisfy the demand, he had allowed the property of Clarke and Sharpe to pass from his control, as he had a right to do. Again: at the time of these instructions, the sheriff had, in good faith and rightfully, advertised and was about to sell property of Ketchum sufficient· to satisfy the debt. The plaintiff could not then compel him to look up other property and sell it, to pay two-thirds of the debt, or make him liable for that amount for his refusal to do so.

(*c.*) Again: it is not proved or found that the sheriff could have made two-thirds of the execution from the pro-

perty of Clarke and Sharpe, at the time he was directed to do so, if he had made the effort. This, at least, should have been found, to warrant the judgment. The contrary is quite evident.

 (d.) Again: There is nothing in the case showing why two-thirds should be made from Clarke and Sharpe. The judgment was against four. It does not appear that Thompson had not property. It does appear that the property of Clarke which was levied upon would not make one-third.

(e.) It was not proved, and is not found, that the property of Clarke and Sharpe, respectively, was sufficient to pay one-third of the amount. The instructions and judgment are on the theory that the sheriff was bound to make two-thirds from their several property, even if it had to be levied from the property of one of them.

4. It is submitted that the judgment is unwarranted by the facts established.

III. At common law an action on the case would not lie against a sheriff for neglecting to execute a *fi. fa.* according to its demand or return it in due season. Much less could an action like this be sustained. (*Moreland* v. *Leigh*, 1 Stark. R. 388; Watson on Sheriffs, 203; *Commonwealth* v. *McCoy*, 8 Watts, 151; *Pardee* v. *Robertson*, 6 Hill, 550–552.)

IV. The statute which gives to an aggrieved party an action for damages against sheriffs and other officers neglecting to execute process, provides for only two classes of cases, viz: 1. When the officer does not execute the process according to the command thereof; and, 2. When he neglects to make due return of his proceeding thereon. In no other cases can the action be maintained by virtue of the statute. (2 R. S. 440, § 77, 1st ed.)

V. It cannot be claimed that this action or recovery is founded on the sheriff's neglect to execute the process according to the command thereof, or to make a return.

1. There is no allegation of such neglect in the complaint; and the recovery was not claimed or had upon this ground.

2. But the sheriff was in good faith proceeding to execute the writ according to the command thereof, and would have collected the money and made due return but for the direction of the plaintiff to desist from selling the property advertised, and not in any event to sell the property of Ketchum. This would be an answer to an action for not making a return.

VI. But, if technically liable, the damages should have been only nominal. The facts do not authorize a judgment for two-thirds of the judgment. On these facts it would be monstrous to hold the defendant liable for this large sum. If bound to pay it, he has no remedy, and the real debtors escape.

*D. B. Prosser*, for the respondent.

I. The only questions which are properly before the court on this appeal are the objections and exceptions taken by the defendants to the reception of evidence on the hearing, and these were the only exceptions in the case upon which the general term gave judgment. The exceptions to the report of the referee, as presented by the case, made and filed since the decision and judgment of the general term, have not been passed upon by that court. This court is strictly a court of review, to correct errors in the actual determination of the general term of the supreme court. The special term had no power or authority to correct the record of the general term, or grant the order allowing the case and exceptions, after the judgment of the general term. The general term, if it had been applied to, could only have corrected the case after judgment, so as to properly present the facts and exceptions actually taken and imperfectly stated, which had been passed upon by it. The general term could not authorize the making a

new case, after judgment, containing exceptions not before taken. (*Johnson* v. *Whitlock*, 3 Kernan, 350.)   Here we have now two cases; the one upon which the judgment of the general term was given, and the other for this court to pass upon.

II. There was no error in the referee's over-ruling the objection on the part of the defendant to the reading of the assignment of the judgment in evidence, because:

1. The execution and delivery thereof was distinctly alleged in the complaint, and was not denied by the answer.

2. The proof was that the assignment was executed and delivered to the witness by the president, in the bank, at the time of the payment of the moneys.   No other evidence of its execution was necessary.

3. The judgment being for less than $1,000, no resolution of the directors was necessary to authorize a sale and assignment thereof, by the president.   (1 R. S. 598, § 8.)

4. The authority of the president, (if any should be deemed necessary,) to execute the assignment, will be presumed, until the contrary is made to appear. (*Bank of Vergennes* v. *Warren & Storrs*, 7 Hill, 91; *Gillett, rec.* v. *Campbell*, 1 Denio, 520.)

III. In case the court should be against us on the propositions contained in the first point, and should deem the exceptions to the report of the referee, as contained in the case made and filed since the decision and judgment of the general term, as properly here on this appeal, it is still submitted that the conclusions of the referee were fully justified under the pleadings and evidence, and that the exception to his report is not well taken, because it is well settled by the authorities that a plaintiff, or owner of a judgment and execution, has a right to instruct the sheriff as to the manner of executing the process, which instructions the sheriff is bound to obey, so long as they are within his general power and duties.   (*Walters* v. *Sykes*,

22 Wend. 566; *Godfrey* v. *Gibbons*, id. 569; *Sherry* v.
*Schuyler*, 2 Hill, 204; *Armstrong* v. *Garrow*, 6 Cowen, 465;
*Gorham* v. *Gale*, 7 id. 739; Allen on Sheriffs, 143–4.)
Therefore it seems to follow that when such instructions
are given and the sheriff refuses to obey, a right of action
for such refusal arises. Were it otherwise, the authority
and right to instruct, and the duty to obey, would be of
no avail, as the law would afford the injured party no
mode of enforcing obedience, or indemnity for damages
suffered by reason of the disobedience. In the case now
before the court, we have not only the neglect of the
defendant to obey the lawful instructions of the plaintiff,
but that he willfully refused to proceed in the collection
of the execution as directed by the plaintiff, or to collect
the same in any way unless he was permitted to go con-
trary to the instructions of the plaintiff. The defendant
ought not to complain if he should be held to a strict
accountability. His refusal was willful, from which the
inference would seem to be warranted that he was in some
way indemnified by the defendants in the execution, for
whom he seemed to be acting. He was willing to obey
the instruction of the plaintiff so far as such instruction
related to the property of Ketchum, but when called upon
to proceed against the property of the other defendants
levied upon, he utterly refused, thus undertaking to pro-
tect two of the defendants in the execution at the expense
of one of the others. It is time the defendant, and all
others holding like executive trusts, learned that it is no
part of their duty to assume the province of a court of
equity, by undertaking to adjust what they may regard to
be equities of the case between the parties; and that it is
their duty to obey the process, and the lawful instructions
of the party having a right to instruct. The plaintiff is
remediless unless he can maintain his action. The defend-
ant holds the execution, with a levy upon sufficient pro-
perty to satisfy the same, but absolutely refuses to proceed

unless he can do so in a particular manner, contrary to the instructions of the plaintiff.  Not only so, but before this action was commenced he received $294 of Clarke upon the execution, which he still holds.

Davies, J.  The sheriff has refused to obey the directions of the plaintiff, in reference to the execution in his hands, and has defended this action upon the theory that he was under no obligations to conform his action to such directions.  In this he is clearly in error.  The party in whose favor process issues, may give such instructions to the sheriff as will not only excuse him from his general duty, but bind him.  Both the process and the law which convey authority under it, are for the benefit of the party in whose behalf it is issued, and it is a general rule that a man may dispense with an entire law which is intended for his aid or protection.  It follows that he may qualify it, to a greater or less extent, according to his discretion. (*Walters* v. *Sykes,* 22 Wend. 566.)  In the present case this plaintiff, as soon as he became the owner of the judgment, became the real plaintiff therein, and in the execution issued to enforce the collection thereof.  Both thereafter were to be employed for his benefit, and were under his control, and those charged with the execution of the process thereon were as much subject to his directions as if he had been the original plaintiff in the judgment.  Almost the precise point arising here was presented in the case of *Godfrey* v. *Gibbons* (22 Wend. 569).  The plaintiff in that case had a judgment against two persons by the name of Gibbons, and one Wiswall.  He issued an execution thereon, directing the sheriff to levy the money of the defendants Gibbons; but the sheriff, acting under their advice, made a levy on the property of the defendant Wiswall only.  The plaintiff then withdrew the first execution, and issued another, which was levied upon the property of the defendants Gibbons, according to the directions of the

2

plaintiff. It was shown by affidavits that, as between the Gibbonses and the other defendants, those defendants ought to pay the debt. This depended on the state of the accounts between the defendants. The defendants Gibbons moved to set aside the last execution, and took the ground that the levy on the property of the defendant Wiswall, under the first execution, and which the plaintiff had released by its countermand, had satisfied the judgment. The supreme court denied the motion, and said they had nothing to do with the state of the accounts between the defendants. The plaintiff, not the defendants, or any of them, had a perfect right to direct a levy on the joint or several property of the defendants, or any of them, the judgment being against all. That the plaintiff was at liberty to disregard the levy made upon the property of Wiswall, for the sheriff was bound by the directions of the plaintiff's attorney to levy on the property of the Gibbonses only. Referring to the case of *Walters* v. *Sykes* (*supra*), the court said the sheriff might, by the direction of the plaintiff's attorney, as a special agent, be restrained and limited to any act which is within his general authority under the writ. We therefore see that the execution is issued for the benefit of the plaintiff therein, or the owner thereof; that it is the duty of the sheriff to conform to his directions, in the execution of the process when within his general authority under the writ. That the plaintiff may direct the amount of the execution to be made from the joint or several property of the defendants therein, and in the judgment, or that of any of them. It follows that the judgment in this case, being against four defendants, and the execution therein against the four, it was competent for this plaintiff to direct the amount thereof to be levied on the property of any of them. That as he could direct the whole to be made out of the property of any of the defendants, it also follows that he could direct less than the whole to be made in like manner. Upon the defendant's theory,

Ketchum could have been compelled to pay the whole judgment. Undoubtedly the plaintiff could have collected the whole judgment from his property. Upon the same principle, and for the same reason, the whole of the judgment could have been collected from the property of the defendants Clarke and Sharpe. If the whole could have been collected from them, it is difficult to see why two-thirds may not be. It was, therefore, clearly the duty of· the sheriff to conform his action to the directions of the plaintiff, and collect the two-third part of the judgment out of and from the property of the defendants, Clarke and Sharpe, levied on by him; and as the referee has not found that such property was inadequate to make such amount, we must assume it was sufficient for that purpose. The plaintiff was, therefore, damnified to the extent of two-thirds of the amount of his judgment, by reason of the refusal of the defendant to comply with his directions, and the referee properly gave judgment for that amount.

The judgment should be affirmed.

MULLIN, J., was for a reversal. All the other judges being for affirmance, judgment affirmed.