## TUCKER v. TUCKER.

December, 1868.

The surrogate, upon a final or litigated accounting of an executor or administrator, has no jurisdiction to try the validity and amount of a disputed demand against the estate.

The omission of the executor or administrator to offer to refer a claim, when presented, is not necessarily an admission of it, which precludes him from contesting it, and thus preventing its allowance by the surrogate, on an accounting.[*]

The actual submission of a contested claim to the surrogate, all the parties in interest being present, can not be sustained as an arbitration.

The short limitation provided by 2 R. S. 89, § 38, in the case of a claim disputed or rejected and not referred, is only applicable where the presentment and rejection take place after publication of notice to creditors.

Nancy Tucker petitioned the surrogate for a sale of the real property of Samuel Tucker, deceased, for payment of a debt she claimed to be due her. It appeared that she had formerly presented the claim, duly verified, to Jedediah Woodward and Clarissa Tucker, the administrators, who denied the validity of the claim and refused to pay it. The administrators had not advertised for claims. Upon a final accounting of the administrators, subsequently had before the surrogate

------

[*] See Hoyt v. Bonnett, 50 N. Y. 541; reversing 58 Barb. 529; Tuck. 490.

under the statute, at which the heirs at law as well as the next of kin and administrators were present, the claimant presented evidence in support of her claim, after hearing which the surrogate decided that it was not proved, and refused to allow it. No appeal was taken.

When the present petition for the sale of the real property for payment of this claim was presented, the heirs objected that the claim had already been tried and rejected by the surrogate, and the surrogate upon this ground refused to order the sale of the real property.

*The supreme court,* on appeal, held, in an opinion by GROVER, J., that this was error, and reversed the order, and the administratrix and others appealed.

BY THE COURT.—MILLER, J.—The claim of the appellants, at the time of the final account, was disputed within the meaning of the statute. When it was presented to the administrator, it was not admitted, and it appears that at one time the administratrix said she had no right to pay it, and at another, the administrator said there was fraud in the claim, and he was opposed to paying it. Upon the accounting, the demand was presented and its allowance opposed. Evidence was given in support of it, and it was disallowed by the surrogate. If it was not a disputed claim, where was the occasion for a contest? Why was it rejected, and why not allowed with other claims against the estate?

It is said, that if the administratrix doubted the claim, she should have offered to refer it, and by not doing so, it became a liquidated and an undisputed demand against the estate. The answer to this proposition is, that neither party chose to consider it in that light, and on the hearing before the surrogate, it was contested and rejected. Had it not been, there was no necessity for the introduction of evidence, and it would have been allowed as a matter of course. Nor can the claim be regarded as one about which the representatives had no knowledge whatever, and which they were not in a condition either to admit or deny, and therefore was cognizable by the surrogate under the provisions of the statute. 2 *R. S.* 95,

§ 71. I think that the statute does not cover any such case, and that representatives in the discharge of their duties are not at leave to occupy the equivocal position of neither allowing nor rejecting an account presented. The statute makes provision, that if the representative doubts the correctness of the claim, he may enter into an agreement to refer it. 2 *R. S.* 88, § 36. But it nowhere authorizes him to hold the question of allowance or rejection in abeyance until a final accounting is had, when the claim can be contested or allowed at his volition.

The claim being clearly a disputed one, the question arises, whether the surrogate of a county has jurisdiction to hear, try and determine the amount and validity of a disputed demand, upon a final accounting of an executor or administrator.

The power of the surrogate to act and adjudicate in such a case depends upon the construction to be placed upon section 71 of 2 *R. S.* 96, before cited, which relates to the duties of executors and administrators in rendering an account and in making a distribution to the next of kin, and which provides that, whenever an account shall be rendered and finally settled, (except under certain sections which are stated,) if any part of the estate remains to be paid or distributed, the surrogate may make a decree for the payment and distribution thereof among the creditors, etc., according to their respective rights; "and in such decree shall *settle and determine* all questions concerning any debt, claim, legacy, bequest, or distributive share; to whom the same shall be payable; and the sum to be paid to each person." This provision of the statute has been the subject of judicial interpretation, and it has been held in several cases in the supreme court of this State, that the surrogate has no power to adjudicate in reference to a disputed claim. Magee *v.* Vedder, 6 *Barb.* 352; Wilson *v.* Baptist Ed. Society of N. Y. 10 *Barb.* 308; Disosway *v.* Bank of Washington, 24 *Id.* 60; Curtis *v.* Stillwell, 32 *Id.* 354; Andrews *v.* Wallege, 8 *Abb. Pr.* 425. Among the cases cited are the decisions of four general terms of this State, and in the opinions delivered, the statutes bearing upon the jurisdiction of the surrogate in such cases, and the authorities relating to the question are fully considered, so that no field of inquiry

remains to be explored. The full examination of the question made in Magee *v.* Vedder, *supra*, forecloses further discussion at this time, and I am unable to discover any answer to the positions there assumed. In The Bank of Poughkeepsie *v.* Hasbrouck, 6 *N. Y.* 216, to which we have been referred by the appellant's counsel, the question now made did not arise, and the point was not involved or adjudged. The intimation made at the close of the opinion of JOHNSON, J., is not sufficiently justified to overrule the elaborate discussion of the subject in the cases cited.

Concurring mainly in the views expressed in these cases, there is little room for further remarks. It may, however, be observed that the interpretation placed upon the statute would seem to be consistent with the character and purposes of a probate court, where the jurisdiction is confined to the control and distribution of estates of deceased persons. For if the door was once open to litigate every demand which might be presented upon a final accounting, it would necessarily impose upon surrogates' courts a class and amount of business, and of labor and responsibility, far transcending the objects for which they were instituted. This clearly could never have been designed, and it is very manifestly compatible and consistent with the organization of such courts and the statute relating to them, to leave to other tribunals duly constituted for that purpose, the determination of disputed claims, which frequently involve the most intricate questions of law and fact, which must necessarily require much time in their investigation, and create extensive litigation. The jurisdiction of the surrogate is local, limited in its nature, and was never intended to embrace cases of such a character, but to be confined to the discharge of certain prescribed duties, which do not embrace the hearing and disposition of claims which are contested.

If these views are correct and these decisions cited are to be considered as decisive, then the question arises, whether the submission of the claim by the respondent and its rejection was binding and final as an arbitration, so as to preclude its enforcement afterward. It is claimed that such is the case.

As the surrogate had no original jurisdiction, and exceeded his powers, I think that the proceedings must be regarded as

*coram non judice* and void, unless they can be upheld on the ground that they were an arbitration binding upon the parties, who were all represented on the occasion, consented to the proceedings, took part in the same, and submitted the matter to the surrogate. It is conceded that administrators have no power to arbitrate; and I do not think that this rule can be waived or obviated because the creditor, next of kin, and administrator were present and participated in the proceeding. For if it was binding on the creditor and next of kin as an arbitration, it was not on the administrator, and being invalid as to one of the parties, would not be obligatory upon the others. The proceeding was not in any sense an arbitration, but it was the proceeding of a court acting beyond its jurisdiction, assuming unauthorized powers and making a judicial determination void and nugatory upon its face. There is no rule of law which sanctions such an arbitration, and a judgment under such circumstances is open to assault for want of lawful authority and jurisdiction.

It is said that the provision of the statute, *L.* 1850, c. 272; 3 *R. S.* 5 ed. 181, § 72, to the effect that the final decree of a surrogate upon the final settlement of an account, &c., shall have the same force and effect as the decree or judgment of any other court of competent jurisdiction, &c., applies to the decree of the surrogate in proceedings had on the final accounting, and is a bar to the application made by the respondent. The statute cited relates, I think, to a decree and judgment made according to law and within the jurisdiction of the surrogate, and not to a decree or judgment where that officer has plainly exceeded his authority, as was the case here. In the latter case, the decree, having been made without authority, is not a bar, and can have no effect in preventing further action.

It is also insisted by the counsel for the appellants that if the claim was disputed and the surrogate had no jurisdiction to try the question as to its validity, that then it is barred by the statute of limitations. The statute in question, 2 *R. S.* 89, § 38, enacts, that if a claim against an estate of a deceased party shall have been disputed or rejected, and shall not have been referred, the claimant, within six months thereafter, or

within six months after the debt or any part thereof shall become due, shall " commence a suit for the recovery thereof, or be forever barred from maintaining any action thereon," &c. In Whitmore *v.* Foose, 1 *Den.* 159, it was held that the limitation of actions provided by the statute, is only applicable to cases where the presentment and rejection of the claim is after the publication of notice requiring creditors to present their claims against the estate, as authorized by section 34 of the same title. The decision in this case is, I think, a correct exposition of the statute; and I am unable to see how any distinction can be made between the case cited and the one under consideration.

It is also insisted that the respondent was barred or estopped from prosecuting his claim, by the fact that a portion of the proceeds of the personal estate had been improperly applied by the representatives, to the payment of a mortgage debt, and such payment was allowed them on the final accounting without objection from her, and without any appeal from the decree.

The fact that the estate was improperly applied does not sufficiently appear by the proceedings, and it is not shown that the mortgage paid was not executed by the intestate, and that he was not personally bound to pay the amount secured thereby. In the latter case there could be no objection to the application made; it could not be said that the whole of the personal estate had not been duly applied. 2 *R. S.* 101, § 10. The application to sell the real estate may be made, whenever it is discovered that the personal estate is insufficient to pay the debts. *L.* 1837, c. 460, § 10 ; 3 *R. S.* 5 ed. 187. And in this case it is conceded, that even if the sum alleged was improperly paid, there was still insufficient to pay the whole of the respondent's demand. This last fact would entitle the respondent to pay from some source, and if the personal estate was not enough, then why should not the real estate be appropriated for that purpose ? It is said that the surrogate must be satisfied that the personal estate of the deceased is insufficient, and that the whole estate which should have been applied to the payment of the debts of the deceased, has been duly applied for that purpose. 2 *R. S.* 102, § 14, sub. 3.

IV.—28

The answer is, that the application was not rejected upon any such ground, and it nowhere appears that he was not satisfied. If the decree had thus stated, the point might be properly before us, but as it stands, the point does not arise.

The order of the general term must be affirmed, and the proceedings remitted to the surrogate's court of Erie county with directions to proceed thereon. The respondent also should have costs upon the appeal, to be paid out of the estate.

A majority of the judges concurred

Order affirmed, with costs to be paid out of the estate.